**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

SAHARRIS ROLLINS,                    :    CIVIL ACTION
                                     :
                Petitioner,          :
                                     :
        v.                           :    NO. 04-2544
                                     :
JEFFREY BEARD, et al.,               :
                                     :
                Respondents.         :
_____      :

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

Saharris Rollins has filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  For the reasons that follow, I recommended that the Petition should be denied with prejudice and dismissed without an evidentiary hearing.

**I.    PROCEDURAL HISTORY.[1]**

On July 21, 1988, following a five-day jury trial with co-Defendant Eddie Ward, Rollins was found guilty of first degree murder.[2]  The Honorable Michael R. Stiles of the Court of Common

---

[1]This information is taken from the Petition for Writ of Habeas Corpus, the Response, the Reply, the Sur-Reply, the Response to New Matter in the Sur-Reply, and all attachments to those pleadings.

[2]The evidence at trial established that on November 16, 1982, Rollins walked into the R&F Bar around midnight and approached Darrell Williams, also known as Saheed. Rollins told Williams that he wanted to talk about his brother Freddy, also known as Mioshi, who had been killed prior to November 16, 1982.
Rollins and Williams sat in a booth in the bar to talk. Rollins told Williams that he knew that Williams had knowledge of where the people who were involved in Mioshi's death lived.

Pleas of Philadelphia County sustained a demurrer to the murder charge filed by Ward.  On June 19, 1989, Judge Stiles denied Rollins's post-verdict motions and sentenced Rollins to life imprisonment.  (Resp. Ex. A.)

Rollins filed a timely direct appeal with the Pennsylvania Superior Court, claiming that the trial court: (1) abused its discretion by refusing to grant him additional peremptory challenges; (2) erred in denying Rollins's requests for a jury instruction under <u>Commonwealth v. Kloiber</u>, 106 A.2d 820 (Pa. 1954), concerning the jury's consideration of identification testimony and an instruction advising the jury on the effect of the prosecution's deal with Darrell Williams, one of Rollins's accomplices who testified against Rollins in exchange for a

---

Rollins asked Williams where they lived, and Williams told him across the street.  Rollins then said that he wanted to get them and that he was going to go in and kill them.

At that point, Kevin Johnson, the deceased, walked into the bar to get change to buy a pack of cigarettes.  Williams pointed out Johnson as one of the men who lived at the house where those involved with Mioshi's death lived.  Rollins then loaded his gun under the table, said he was going to kill Johnson, got up, and left the bar.  Williams then also got up and left the bar.  Outside the bar, Rollins said to Williams, "This dude is gone."

A short time later, Johnson left the bar.  Williams heard a gunshot and turned to see Rollins fire two or three more shots into Johnson.  Rollins and Williams fled the scene.
Two other witnesses, Charlene Wiggins and Crawford Matthews, testified at trial that, after hearing the initial gunshot, they turned to see Rollins firing repeatedly at the victim.

Johnson was pronounced dead at 12:40 a.m. on November 16, 1982.  On November 17, 1982, a postmortem examination was conducted and the medical examiner determined the cause of death was homicide as a result of the combined effects of the four bullet wounds to the body.  (Resp. Ex. A at 2-3.)

guilty plea to third degree murder; and (3) erred in instructing

the jury on malice.  (Pet. Reply Ex. E.)  The Superior Court

affirmed the judgments of sentence on March 1, 1990.  (Resp., Ex.

B, Commonwealth v. Rollins, 576 A.2d 1138 (Pa. Super. Ct. 1990).)

On August 24, 1992, the Pennsylvania Supreme Court denied the

petition for discretionary review.  See Commonwealth v. Rollins,

0268 E.D.A.D. 1990 (Pa. Aug. 24, 1992).

    Rollins filed a timely pro se petition under the

Pennsylvania Post Conviction Relief Act, 42 Pa. C.S.A. § 9541, et

seq. ("PCRA") on January 14, 1997.[3]  Counsel was appointed and,

on December 7, 1999, filed an amended PCRA petition.  The

Commonwealth filed a Motion to Dismiss on April 16, 2001, which

the PCRA court granted by order of May 30, 2001.[4]  (Resp. Ex. C.)

---

    [3]The pro se petition was filed on January 14, 1997, two days
before the state time bar for Rollins to seek collateral review
expired.  (See Resp. Ex. C.)

    [4]I note that neither party has appended Rollins's original
or counseled PCRA petition.  On July 2, 2001, the PCRA court
filed an opinion setting forth its reasons for dismissing the
PCRA petition, in which the court set out the claims presented.
The entire reasoning of the court follows:
        Defendant claims prosecutorial misconduct occurred
    when false information was provided to obtain a capital
    jury.  Judge Stiles decided the evidence did not
    support the aggravating circumstance of knowingly
    creating a grave risk of death to another person.  This
    decision was reached following an evaluation of the
    evidence.  The decision that the bystanders were too
    far away to the [sic] subjected to a grave risk of
    death was made following an evaluation of the evidence
    presented at trial.  Prosecutorial misconduct did not
    occur.  As such counsel could not be ineffective for
    failing to object to a death qualified jury.

Rollins, represented by his appointed PCRA counsel, appealed the dismissal to the Pennsylvania Superior Court, arguing: (1) a violation of Batson v. Kentucky, 476 U.S. 79 (1986); (2) trial counsel was ineffective for not objecting to the designation of his case as a capital murder based on what Rollins alleged was a false and misleading aggravating circumstance; and (3) the trial court erred in its decision to permit the jury to continue deliberating at its hotel.[5]  (Resp. Ex. E.)  On March 13, 2002, new counsel entered her appearance on behalf of Rollins, and on October 17, 2002, the Superior Court granted new counsel's motion to file a supplemental brief.  Counsel thereafter sought and was granted numerous extensions of time to file the supplemental brief, but on March 24, 2003, when the instant case was submitted

---

Defendant argues that trial counsel was ineffective for not objecting to the jury being allowed to deliberate in their hotel.  This claim is specious.  More importantly, defendant cannot establish that this arrangement for the continued deliberations prejudiced his case.
Defendant raises a Batson challenge.  He claims racial discrimination was involved in the selection of the jury.  Defendant's claim is general and without specifics.  Moreover, the record does not support his claim.
Since none of the defendant's claims have merit, defendant's final allegation that the cumulative effect renders his trial unfair is without merit.
For these reasons, the Commonwealth's motion to dismiss was granted.

(Resp. Ex. C at 1-2.)

[5]Rollins also claimed that the PCRA court had erred in dismissing the petition without a hearing.  (Resp. Ex. E.)

4

to the Superior Court panel, no supplemental brief had actually been filed.  (See Resp. Sur Reply Ex. A.)  On May 30, 2003, based on the briefs filed by Rollins's former counsel and the Commonwealth, the Superior Court affirmed the denial of PCRA relief.  (Resp. Ex. D, Commonwealth v. Rollins, No. 1942 EDA 2001.)

On July 15, 2003, Rollins filed an amended petition for allowance of appeal with the Pennsylvania Supreme Court.  (Pet. Reply Mem. Ex. A.)  In it, he argued that: 1) PCRA counsel was ineffective for failing to raise claims; 2) trial counsel was ineffective – and PCRA counsel was ineffective for failing to raise trial counsel ineffectiveness – for:  a) failing to interview witnesses and conduct a pre-trial investigation, b) failing to look into what occurred at an earlier preliminary hearing where similar charges were dismissed, and c) failing to request impeachment evidence in the Commonwealth's possession; and 3) the Commonwealth failed to disclose Brady material.  (Id.)  On March 3, 2004, the Pennsylvania Supreme Court denied Rollins's amended petition for allowance of appeal.

Rollins filed the instant federal habeas petition on June 10, 2004, raising twelve issues.  Those issues are: (1) a denial of effective assistance of trial counsel for (a) failure to conduct any investigation into the case, (b) failure to file an omnibus pre-trial motion or other motions, and (c) failure to

5

investigate the preliminary hearing where the same charges were dismissed; (2) his conviction was obtained by failure of the prosecution to turn over Brady evidence favorable to Rollins; (3) a violation of due process because the prosecution thwarted his PCRA proceedings and the PCRA court permitted his attorney to ignore his issues and not investigate his case; (4) both prosecutorial misconduct in using jury strikes in a racially discriminatory manner, and trial counsel ineffectiveness in failing to object the prosecution's jury strikes; (5) a denial of due process due to the Commonwealth's empaneling a death-qualified jury in a non-capital case and trial counsel ineffectiveness in failing to object to the Commonwealth's actions; (6) a denial of due process when a death-qualified jury convicted him in a non-capital case, and trial counsel ineffectiveness in failing to object to or argue this error; (7) a violation of constitutional rights arising from the jury being permitted to conduct improper deliberations in a hotel room as opposed to proper deliberations in a jury deliberation room, and trial counsel ineffectiveness in failing to object to or argue this error; (8) the trial court violated Rollins's due process by acting arbitrarily and denying Rollins an appropriate number of peremptory challenges, and trial counsel's argument was ineffective; (9) the trial court unconstitutionally refused to provide the required instructions on identification and witness

credibility, and counsel's argument was ineffective; (10) the trial court's instructions on malice, intent, and the liability of each defendant were vague and unconstitutional, violated Rollins's right to a proper jury verdict, and impeded a finding of not guilty, or guilty of a lesser charge, or of a degree less than first degree murder or manslaughter, and counsel did not make an effective objection or argument; (11) direct appeal counsel provided ineffective assistance for not raising and/or effectively arguing all of his federal issues; and (12) due to ineffective assistance of counsel and violations of due process, Rollins's conviction and the denials of relief in state court are unconstitutional.[6]

On July 21, 2004, this case was referred by the Honorable J. Curtis Joyner for preparation of a Report and Recommendation.  In its Response filed on December 10, 2004, the Commonwealth contends that some of these claims are procedurally defaulted, all are meritless, and none are entitled to federal habeas review.

Rollins requested appointment of counsel, and on January 28,

---

[6]In his Reply Memorandum and Proffer of Facts to Support the Petition, Rollins withdraws his tenth claim for relief, i.e., that the trial court's instructions on malice, intent and the liability of each defendant were vague and unconstitutional, violated Rollins's right to a proper jury verdict, and impeded a finding of not guilty, or guilty of a lesser charge, or of a degree less than first or manslaughter, and counsel did not make an effective objection or argument.

2005, based upon the fact that the Federal Defender's Office was already representing Rollins in a separate habeas action, I granted Rollins's request for appointment of counsel and directed that a Reply, if any, to the Response should be filed by Rollins's counsel on or before March 14, 2005.  Counsel was thereafter granted various unopposed extensions of time to file the Reply by August 15, 2005.  Thereafter, counsel for Respondents and counsel for Rollins attempted to devise a global settlement of Rollins's two habeas cases.  When settlement discussions proved fruitless, Respondents were ordered to file a Sur-Reply to the Petition.  Rollins filed a Supplement to his Reply Memorandum and Proffer of Facts in Support of the Petition on May 15, 2006.  Respondents filed their Sur-Reply to the Petition on June 1, 2006; Rollins filed a Memorandum in Response to the New Matter Contained in the Commonwealth's Sur-Reply on June 21, 2006.

II.    **DISCUSSION**.

    A.    **Rollins's First Issue – Ineffective Assistance of Trial Counsel**.

Rollins's claims that trial counsel was ineffective when he: (1) failed to conduct any investigation; (2) failed to file pre-trial motions; and 3) failed to investigate the March 1984 preliminary hearing where similar charges against him were dismissed.  These issues were presented to the state courts only in Rollins's amended petition for allowance of appeal to the

8

Pennsylvania Supreme Court, following the Superior Court's affirmance of the dismissal of his PCRA petition.  I recommend that each of these claims is procedurally defaulted with no showing of cause and prejudice or a miscarriage of justice.  I also recommend that, even if not defaulted, they have no merit.

### 1.    **The Exhaustion Doctrine and Procedural Default**.

The federal habeas statute requires that prisoners exhaust their claims in state court before seeking relief from the federal courts.  <u>See</u> 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  Absent exceptional circumstances, a federal court may not determine the merits of a habeas corpus petition until the petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 3354(b); <u>O'Sullivan v. Boerkel</u>, 526 U.S. 838, 839 (1999); <u>Slutzker v. Johnson</u>, 393 F.3d 373, 379 (3d Cir. 2004).  Principles of comity "dictate that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." <u>O'Sullivan</u>, 526 U.S. at 844-45.  The petitioner bears the burden of proving that he has exhausted available state remedies.

Landano v. Rafferty, 897 F.2d 661, 668 (3d Cir. 1990).

"Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Coleman v. Thompson, 501 U.S. 722,731-732 (1991).  A state procedural rule is "independent" and "adequate" – and thus effective to preclude (or "procedurally default") habeas review - only if: (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts have refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions.  Doctor v. Walters, 96 F.3d 675, 683-84 (3d Cir. 1996).  Elaborating on the third requirement, the United States Court of Appeals for the Third Circuit has noted that the state procedural rule must be evenhandedly administered and "consistently and regularly applied."  Id. at 684 (quoting Johnson v. Mississippi, 486 U.S. 578 (1988)).  It is sufficient that the procedural rule be "applied in a 'consistent and regular manner'" "in the 'vast majority of cases'."  Id. (quoting Dugger v. Adams, 489 U.S. 401, 410 n. 6 (1989)).

The default will be excused if petitioner can demonstrate that a failure to consider his claims will result in a

miscarriage of justice. <u>Id</u>. at 750. The United States Supreme Court has repeatedly held, however, that the scope of the miscarriage of justice exception is a narrow one. <u>Sawyer v. Whitley</u>, 505 U.S. 333 (1992); <u>McCleskey v. Zant</u>, 499 U.S. 467 (1991); <u>Dugger</u>, 489 U.S. at 401. This exception only applies when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986). The Supreme Court has suggested that the test for actual innocence is whether there is "a fair probability that, in light of all the evidence, including that to have been . . . wrongly excluded or to have become available only after trial, the trier of the fact would have entertained a reasonable doubt of his guilt." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454-55 n.17 (1986).

The procedural default in this case was the failure of the petitioner to include these claims in his timely filed PCRA petition. It is clear from the record that Rollins raised these claims for the first time in his Petition for Allowance of Appeal to the Pennsylvania Supreme Court, following the Superior Court's affirmance of the dismissal of his PCRA petition. In <u>Commonwealth v. Griffin</u>, 644 A.2d 1167, 1170 (Pa. 1994), the Pennsylvania Supreme Court held that "[i]n order to preserve a claim of ineffectiveness of counsel under the PCRA, the claims must be raised at the earliest stage in the proceedings at which

the allegedly ineffective counsel is no longer representing the
defendant." Id. at 1171.  The Pennsylvania Supreme Court
specifically decided that a claim of trial or appellate error is
waived if raised for the first time in an appeal of a PCRA
petition.  Id. (citing Commonwealth v. Hubbard, 372 A.2d 687 (Pa.
1977)).  Unless raised in the PCRA petition itself, any
assertions of ineffectiveness are waived under Pennsylvania law.
Id. (citing Commonwealth v. McNeal, 426 A.2d 606 (Pa. 1981)).

I recommend that this waiver rule is an independent and
adequate state procedural rule that Rollins violated.  As the
time for filing any new state petition to exhaust these claims
has long since expired, they are unexhausted and procedurally
defaulted with no showing of cause and prejudice or miscarriage
of justice.

## 2.  **Constitutional Ineffectiveness**.

Even if they were not defaulted, I recommend that none of
these claims of constitutional ineffectiveness has merit.  First,
Rollins does not provide any context to support his assertion
that his trial counsel did not investigate his case.  Respondents
point to Rollins's trial counsel's utilization of the notes of
testimony from the grand jury proceedings to impeach those
witnesses who had appeared before the grand jury.  Respondents
also note that counsel's failure to file pre-trial motions,
without more, fails to allege a colorable claim of

12

ineffectiveness.  See Kimmelman v. Morrison, 477 U.S. 365 (1986)
(holding that the failure to file a motion to suppress is not per
se ineffectiveness).

    The cause of action for ineffective assistance of counsel is
based on the Sixth Amendment right to counsel, and exists "in
order to protect the fundamental right to a fair trial."
Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(quoting Strickland
v. Washington, 466 U.S. 668, 684 (1984)).  A claim for
ineffective counsel must meet the two-part test advanced by the
Strickland court.  First, petitioner must show that counsel "made
errors so serious that counsel was not functioning as the
'counsel' guaranteed the defendant by the Sixth Amendment.
Second, [petitioner] must show that the deficient performance
prejudiced the defense.  This requires a showing that counsel's
errors were so serious as to deprive the defendant of a fair
trial, a trial whose result is reliable." Strickland, 466 U.S.
at 687.  More precisely, petitioner must show that (1) his
attorney's performance was unreasonable under prevailing
professional norms, and, unless prejudice is presumed, that (2)
there is a reasonable probability that, but for counsel's
unprofessional errors, the result would have been different.
United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

    Several important factors are considered in evaluating an
attorney's performance under Strickland.  First, there are no

detailed rules or guidelines for counsel to follow for any particular set of circumstances.  "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions...[thereby putting counsel at odds with] the overriding mission of vigorous advocacy of the defendant's cause."  <u>Strickland</u>, 466 U.S. at 689.  The Court recognized that it is much easier to find fault with counsel's choices after those choices have been implemented and have been proven unsuccessful.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight. . ."  <u>Id</u>.  Thus, in judging counsel's conduct the court will view counsel's choices in light of all the circumstances while at the same time keeping in mind that "[t]here are countless ways to provide effective assistance in any given case."  <u>Id</u>.  The Supreme Court concluded that these factors, along with considerations of counsel's independence and attorney client trust, gave counsel a strong presumption that his conduct "falls within the wide range of reasonable professional assistance."  <u>Id</u>.

### A.   **Failure to File Pre-trial Motions**.

Under <u>Strickland</u>, Rollins is required to explain what motion his counsel should have filed and why such a motion would have been arguably meritorious.  Rollins's bald assertion that his

14

counsel did not file discovery or other pre-trial motions is meaningless because Rollins offers no information that the motions, if filed, would have produced some other desired result, or that Rollins's case was prejudiced in the absence of any of these motions.

### B.   **Failure to Investigate**.

Rollins's other ineffectiveness claims allege that trial counsel failed to investigate the March 1984 preliminary hearing or conduct any other investigation.  I recommend that Rollins has not established that counsel's performance was constitutionally deficient or that the trial outcome would have been different but for this omission.  The record reflects that trial counsel explored the fact that the Commonwealth's eyewitnesses to the crime had previously refused to implicate Rollins and had given contradictory versions of the crime to the police when the witnesses testified before the grand jury.  Accordingly, I recommend that this assertions of trial counsel ineffectiveness has merit.

### B.   **Rollins's Second Issue – the Commonwealth  Failed to Provide Him With Brady Material; Derivative Ineffective Assistance**.

Rollins's next claim is that the prosecution failed to turn over <u>Brady</u> material relevant to the credibility of the Commonwealth's key witnesses.  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Rollins claims that this argument was exhausted when his

PCRA appeal attorney presented it to the state court. Respondents contend, on the contrary, that this claim was not among those raised by Rollins's PCRA counsel on appeal from the denial of post conviction relief; that Rollins cannot rely on any argument intended to be asserted by replacement PCRA counsel because she did not actually file any supplemental brief on Rollins's behalf despite numerous extensions by the Superior Court to enable her to do so; and the Superior Court found that Rollins's first PCRA counsel remained counsel of record.

I recommend that the Brady issue is procedurally defaulted with no showing of cause and prejudice or miscarriage of justice. Rollins may not rely on any "supplemental" claims that his second counsel may have intended to raise but that were never actually filed.  Moreover, any attempt to raise the issue on appeal, even if consummated, could not be considered an exhaustion of state remedies, given the above described state law waiver rule involving claims not raised at the earliest stage of the PCRA process.  Accordingly, Rollins's later inclusion of the claim in his Amended Petition for Allowance of Appeal also cannot constitute exhaustion.

The claim also has no merit.  Rollins claims that trial counsel did not demand Brady material, but again fails to identify the unrequested material.  The prosecution disclosed the prior criminal records of three eyewitnesses, Charlene Wiggins,

16

Crawford Matthews, and Darrell Williams.  These individuals testified to their drug and alcohol use at the time of their observations of the crime, and their prior inconsistent statements and testimony about the crime.

Annette Carter, a prosecution witness, testified that she had conveyed a threatening message to Charlene Wiggins on behalf of co-defendant Eddie Ward to ensure that Wiggins would not testify.  Carter testified that she had been arrested two weeks before her trial testimony and had been held for court the week before.  On cross-examination, trial counsel attempted to insinuate that Carter was a drug dealer who had received favorable treatment from the police who had not arrested her for such activity and while Carter denied the accusation, the jury was free to reject Carter's testimony.

Respondents note that even if there was additional impeachment testimony which should have been disclosed under Brady, this fact alone does not constitute a violation of Brady. A Brady claim has three components: (1) the undisclosed evidence must be favorable to the accused either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state wither willfully or inadvertently; and (3) the undisclosed evidence must be material in that the absence of this evidence must have resulted in a trial which was unfair. Strickler v. Greene, 527 U.S. 263, 283-284 (1999); Hollman v.

17

Wilson, 158 F.3d 177 (3d Cir. 1998).  Assuming that Rollins could show that the unspecified evidence allegedly not disclosed would have been useful for impeachment purposes, he cannot show that the absence of this additional impeachment evidence probably would have resulted in a different outcome.  Given the amount of impeachment evidence that was presented to the jury, any additional impeachment evidence was simply not material and therefore Rollins cannot meet the third Brady prong.

The record shows that the jury knew of the prior criminal records of the eyewitnesses.  With respect to Charlene Wiggins, the jury knew that she admitted to being high when she observed the crime and that, at first, Wiggins had refused to testify and had given contradictory statements.  With respect to Crawford Matthews, the jury knew that he was a convicted burglar, that he was a former cocaine user and, that, initially, he had refused to cooperate with the police investigation.  The jury also heard Matthews acknowledge that he was unhappy to be testifying at all.  Lastly, with respect to Darrell Williams, the jury knew that he had testified against Rollins in exchange for pleading guilty to the lesser crime of third degree murder and had received a sentence of "time in" to twenty-three months, which was less than the sentence he might have received if he had refused to cooperate and proceeded to trial where he could have been convicted of murder as an accomplice.

18

In light of this impeachment evidence, it is unlikely that Rollins will be able to show that additional undisclosed impeachment evidence consisting of pending criminal charges and non-specific "reasons to fabricate" would have led to a different result.  Respondents note that this case is similar to <u>Hollman v. Wilson</u>, 158 F.3d 177 (3d Cir. 1998), a case in which the Third Circuit focused in significant impeachment evidence introduced at trial which the jury could have relied upon to find that the witness was not credible.  The Third Circuit concluded that the additional impeachment evidence would not have resulted in a different verdict.  In Rollins's case, given the extensive impeachment evidence with respect to the prosecution's eyewitnesses, Rollins cannot show that the additional information which he claims was not disclosed and which would have been useful for impeachment would have led to a different verdict.  Thus, I recommend that this claim, even if exhausted, has no merit.

C.   **<u>Rollins's Third Issue – The Prosecution Tried to "Thwart" His PCRA</u>**.

Rollins next asserts that the Commonwealth "thwarted" his PCRA proceedings, in violation of his due process rights.  Rollins contends that his court-appointed PCRA counsel was "allowed by the court to ignore his issues and [did] not investigate his case." (Pet. at 10b.)  This claim is procedurally defaulted because it was never presented to any

state courts.  Moreover, as Respondents correctly note, any claim by Rollins for ineffective assistance of PCRA counsel is not cognizable under 28 U.S.C. section 2254(i).

**D.** **Rollins's Fourth Issue – Whether the State Court's Rejection of Rollins's Batson Claim, and the related Ineffective Assistance of Counsel Claim, Were Reasonable Applications of Federal Law.**

Rollins alleges that the Commonwealth used jury strikes in a racially discriminatory manner, and that the state court erred when it rejected Rollins's claim that his trial counsel was ineffective for not objecting to this alleged error.  Respondents argue that any claim pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), is procedurally defaulted.

The Commonwealth asserts – and Rollins does not contend otherwise – that during jury selection, Rollins's trial counsel objected to three peremptory challenges by the prosecutor; that defense counsel raised a Batson objection; that the trial judge found that the relevant facts and circumstances did not establish a prima facie case of racial discrimination by the prosecutor; and the court did not ask the prosecutor to explain her reasons for striking any of the jurors in question.  (Resp. Br. at 30; Pet. Reply Br. at 35-36.)[7]  It is also clear from the record that Rollins did not raise a substantive Batson claim on direct

_____

[7]Although both Rollins and the Commonwealth cite to the notes of testimony of the jury selection to bolster their arguments, neither party included the testimony as an exhibit to their papers.

appeal.  (Pet. Reply Ex. E.)  Accordingly, I recommend that the substantive <u>Batson</u> claim is unexhausted and procedurally defaulted with no showing of cause and prejudice or miscarriage of justice.

The derivative ineffective assistance claim based on trial counsel's failure to preserve the <u>Batson</u> claim is exhausted because it was raised in Rollins's PCRA petition.  On appeal, the Superior Court held, under Pennsylvania law, that counsel was not ineffective.  The Superior Court's recitation of the Pennsylvania standard for ineffective assistance, i.e., that the underlying claim has merit, that counsel had no reasonable basis for his conduct, and resulting prejudice (meaning that the outcome of the proceeding would have been different), has been found to be materially identical to the test enunciated in <u>Strickland</u>.  <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 203 (3d Cir. 2000).  The Third Circuit has ruled that the Pennsylvania standard is not "contrary to" <u>Strickland</u>, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of <u>Strickland</u> to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under <u>Strickland</u>."  <u>Werts</u>, 228 F.3d at 204.

I recommend that the state courts' application of <u>Strickland</u>

was not unreasonable.  The Superior Court determined that the
underlying Batson claim had no merit because the trial court
determined that Rollins did not make a prima facie showing of
racial discrimination in the peremptory strikes, and Rollins also
had failed to demonstrate prejudice on collateral review.[8]  The

---

[8]The Superior Court stated:
> Appellant first argues he is entitled to
> relief because the Commonwealth used its
> peremptory strikes in a racially
> discriminatory manner, striking potential
> jurors for the sole reason they, like
> appellant, were black.  In support of his
> argument appellant references the
> controversial 1987 training tape of the
> Philadelphia District Attorney's Office,
> compiled one year prior to his 1988 trial,
> wherein assistant district attorneys were
> purportedly advised to select jurors in a
> racially discriminatory fashion.  In
> conjunction with this constitutional Batson
> argument, appellant raises a Brady challenge,
> arguing "the prosecution [was obliged] to
> provide this important evidence to the
> defense in this case[.]"  Appellant's brief
> at 9.  In order to preserve this issue for
> our consideration, appellant cloaks it in an
> allegation prior counsel was ineffective "for
> failing to properly object to the
> prosecutor's racially biased use of
> peremptory strikes and for failing to
> properly litigate the issue on direct
> appeal."  Id.
>      The standard of review for a post-
> conviction relief Order is whether the record
> supports the PCRA court's determination and
> whether that determination is free of legal
> error.  Commonwealth v. Allen, 557 Pa. 135,
> 732 A.2d 582 (1999).  The standard for
> determining ineffectiveness of counsel is
> whether (1) there is arguable merit to the
> underlying claim; (2) counsel's chosen course
> of action has a reasonable basis designed to

Superior Court also stated that, "a review of the transcript indicates there is no legitimate basis for [Rollins's argument that] jury selection was tainted."  (Resp. Ex. D. at 3.)  Because the Superior Court recognized and applied the correct underlying substantive law to determine that the Rollins had failed to make a meritorious showing, I recommend that its application of the <u>Strickland</u> standard was not objectively unreasonable.

**E.    <u>Rollins's Fifth and Sixth Issues – Denial of Due</u>**

---

effectuate his client's interests; and (3) the defendant demonstrates prejudice. <u>Commonwealth v. Bess</u>, 789 A.2d 757 (Pa. Super. 2002).  This ineffectiveness standard is the same for claims made pursuant to the PCRA.  <u>Commonwealth v. Jordan</u>, 772 A.2d 1011 (Pa. Super. 2001).

"In order to establish a prima facie case of racial discrimination in jury selection, the defendant must make a record identifying the race of the venire persons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury." <u>Commonwealth v. Marshall</u>, 810 A.2d 1211, 2002 Pa. LEXIS 2400 (Pa. November 22, 2002).

We conclude, and appellant concedes, the record is silent as to the ultimate racial makeup of his jury.  On this basis alone we may dismiss appellant's argument as he has failed to satisfy the standard for relief set forth in Marshall.  Moreover, appellant has failed to establish any prejudice endured as a result of this alleged error by the Commonwealth.  <u>See</u> <u>Bess</u>, <u>supra</u>.  Lastly, a review of the transcript indicates there is no legitimate basis for appellant's argument jury selection was tainted.  Appellant's argument must fail.

(Resp. Ex. D at 2-3.)

**Process in Empaneling a Death-Qualified Jury; Denial of Due Process from Being Convicted by a Death-Qualified Jury; Derivative Ineffective Assistance of Counsel**.

I treat the next two issues together because they assert the same core claim, namely that the trial court's decision to empanel a death-qualified jury, when the Commonwealth provided no notice or evidence of aggravating factors it intended to pursue, violated Rollins's due process rights and his right to an impartial jury.

Rollins presented and exhausted these claims in his PCRA petition.  The PCRA court rejected them stating:

> Defendant claims prosecutorial misconduct occurred when false information was provided to obtain a capital jury.  Judge Stiles decided the evidence did not support the aggravating circumstance of knowingly creating a grave risk of death to another person.  This decision was reached following an evaluation of the evidence.  The decision that the bystanders were too far away to the [sic] subjected to a grave risk of death was made following an evaluation of the evidence presented at trial.  Prosecutorial misconduct did not occur.  As such counsel could not be ineffective for failing to object to a death qualified jury.

(Resp. Ex. C at 1.)  On appeal from the PCRA court, the Superior Court summarized Rollins's argument:

> Next, appellant argues he is, "entitled to relief from his conviction because the prosecutor engaged in impropriety by impaneling a capital jury in a non-capital case, thus denying [him] his rights to due process and a fair trial[.]" . . . Piggy-backed to this claim is the allegation of prior counsel's ineffectiveness, "for failing to raise, litigate and pursue this issue at the time of trial and during post-trial motions[.]"

(Resp. Ex. D at 4.)  After setting out its standard of review for

24

prosecutorial misconduct,[9] the Court continued:

> The record indicated no such prejudicial conduct
> by the Commonwealth.  At the time the prosecution
> decided to seek the death penalty, the facts supported
> the Commonwealth's reasonable belief defendant has
> knowingly created a grave risk of death to another
> person by firing his weapon within the range of several
> bystanders.  In support of its decision, the
> Commonwealth points to the testimony of witnesses Sandy
> Wiggins and Crawford Matthews indicating appellant had
> fired his .357 handgun repeatedly in proximity to
> bystanders within the block.  The prosecution stated it
> also based its decision on the averment by police
> officers that a bullet from the gun used by appellant
> had the ability to travel 2 or 3 blocks. . . . We
> logically can conclude the Commonwealth also was aware
> of this testimony by Commonwealth witnesses prior to
> jury selection.  Following trial, and before the jury
> returned its verdict, the court heard oral argument
> from the prosecution and the defense concerning the
> applicability of the death penalty based on the
> aggravated circumstance of grave risk of death to
> others. . . .  The court, however, did not find the
> Commonwealth presented false and misleading evidence to
> support the aggravating factor; rather, it concluded
> only that the bystanders in question were too far
> removed form [sic] the scene so as to be in danger. . .
> .  The court instructed the jury:
> > In this particular case the only possible
> > aggravating circumstance was whether the
> > defendant knowingly created a risk of death
> > to other people in addition to the victim and
> > I decided as a matter of law given the
> > evidence we have heard that there is not
> > sufficient evidence that anyone else, the
> > defendant knowingly created a grave risk of

---

[9] See Commonwealth v. Paxton, 821 A.2d 594 (Pa. Super. Ct. 2003) ("It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. Relief will be granted for prosecutorial misconduct only where the unavoidable effect of the prosecutor's conduct was to prejudice the jury members so as to form in their minds a fixed bias towards the accused and to impede their ability to objectively weigh the evidence and render a true verdict.")

> death to someone other than the victim at the
> time of the shot.  There is not sufficient
> evidence of that for you to have to decide
> whether the death penalty is appropriate and
> as a result of your verdict the penalty of
> life imprisonment will be imposed.
> . . .  Appellant has presented this Court with no
> evidence of prosecutorial misconduct. . . .  Moreover,
> in light of the fact the death penalty was not imposed,
> he has endured no prejudice as a consequence of this
> death-qualified jury.  There is no merit to appellant's
> prosecutorial misconduct argument, and counsel is not
> ineffective on this basis.

(Resp. Ex. D at 6-8 (internal citations omitted).)

Rollins argues that the prosecutor's statement to the trial court in support of death-qualifying the jury – that there existed the aggravating factor of the murder having occurred on a crowded street – was false.  (Pet. Reply Mem. at 53.) He also argues that the state courts' conclusions that facts supported the Commonwealth's reasonable belief that the grave risk aggravating factor applied was "nothing more than a figment of the imaginations of the court and the Commonwealth."  (Id. at 59.)

I recommend that Rollins's argument ignores the law applicable to federal habeas review of fact finding by state courts.  According to the precepts of Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), state court findings of fact are to be presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  This presumption applies even if the finding was

made by a state court of appeals rather than by the state trial court. Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001). The Superior Court's findings that: 1) Rollins had fired his .357 handgun repeatedly in proximity to bystanders within the block; 2) police officers had averred that a bullet from the gun had the ability to travel 2 or 3 blocks; and 3) the Commonwealth did not present false and misleading evidence to support the aggravating factor, constitute factual findings entitled to the presumption of correctness under AEDPA. Rollins has offered no evidence, let alone clear and convincing evidence, to support his assertion that the Superior Court's findings are incorrect.

The Superior Court's conclusion that the facts supported the Commonwealth's reasonable belief that Rollins knowingly created a grave risk of death to another person by firing his weapon within the range of several bystanders, is a legal conclusion that, under AEDPA, must be shown to be contrary to, or to involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. See Penry v. Johnson, 532 U.S. 782 (2001) (explaining two-prong standard); Williams v. Taylor, 529 U.S. 362, 403-04 (2000) (same). Likewise, the state courts' ultimate conclusions that there was no prosecutorial misconduct or ineffective assistance of counsel violation, and that Rollins suffered no prejudice from being

27

tried by a death-qualified jury, are also legal conclusions. Based upon the facts as found by the state courts, I recommend that these conclusions were not contrary to, or an unreasonable application of, clearly established Supreme Court law.

The Supreme Court has held that prosecutorial misconduct occurs where the prosecutor has "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." Id. at 642.  I recommend that the Superior Court's decision, that there was no prosecutorial misconduct because the Commonwealth had a reasonable factual basis for seeking a death-qualified jury, was not contrary to nor an unreasonable application of Darden.  The state courts found as fact that no false and misleading evidence had been presented as part of the Commonwealth's efforts to support the aggravating factor.  Rather, after all the evidence was presented at the guilt phase of Rollins's trial, the trial court determined that the bystanders in question were too far removed from the point of the shooting so as to be in danger.  As Rollins can point to nothing to show that the Commonwealth acted to "infect the trial with unfairness," his prosecutorial

misconduct / due process claims based on the empaneling of a death-qualified jury, and his conviction thereby, fails. Additionally, because any objection counsel may have made to death-qualifying the jury would have been without merit, the failure of counsel to object to a death-qualified jury can not constitute ineffective assistance of counsel.

   **F.   <u>Rollins's Seventh Issue: Violation of Constitutional Rights from Jury Deliberations in a Hotel Room; Derivative Trial Counsel Ineffectiveness</u>**.

   This issue was raised and exhausted in Rollins's PCRA petition.  (Resp. Ex. E at 15.)  The Superior Court found this claim was meritless, stating:

> Appellant next argues that he is entitled to a new trial because the jury was allowed to deliberate in their hotel, absent proper court supervision, thereby inviting jury tampering, misconduct, or undue influence.  He again contends counsel was ineffective for not objecting to the court permitting such deliberation.  Appellant fails to allege, however, any specific harm that came from allowing the jury to deliberate in the hotel, or how the outcome of his trial could have been different if counsel had objected.  Such speculation, without factual or legal support, does not provide a basis for relief. . . . Moreover, the record indicates that prior to allowing the jury to continue its deliberations at its hotel, the court cautioned the jurors, who had been deliberating all day, that they first must have dinner, may only deliberate for a "reasonable time," must all remain together, may not have contact with anyone other than their fellow jurors, and must get a "reasonable" night's sleep.  N.T., 7/20/88 at 467-468.  There was no error.

(Resp. Ex. D at 8-9 (internal citation omitted).)  Rollins argues that this decision was error; that permitting the jury to

deliberate at its hotel, without proper court supervision can easily result in jury misconduct, tampering or undue influence.

I recommend that the Superior Court decision was not contrary to nor an unreasonable application of Supreme Court law. As identified by Rollins, the applicable case law is <u>Mattox v. United States</u>, 146 U.S. 140, 150 (1892), and <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982).  In <u>Mattox</u>, the bailiff who had charge of the jury while it was deliberating made improper statements within the jury's hearing.  In addition, a newspaper containing a story about the trial was introduced into the jury room.  <u>Id.</u> 142.  The Court held that:

> It is vital in capital cases that the jury should pass upon the case free from external causes tending to disturb the exercise of deliberate and unbiased judgment.  Nor can any ground of suspicion that the administration of justice has been interfered with be tolerated.  Hence, the separation of the jury in such a way as to expose them to tampering may be reason for a new trial, variously held as absolute; or prima facie, and subject to rebuttal by the prosecution; or contingent on proof indicating that a tampering really took place. . . .  Private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.

<u>Id.</u> at 149-50.  In <u>Smith</u>, a juror had submitted an application for employment as an investigator in the office of the district attorney during the trial.  In concluding that there was no due process violation arising from the juror's action – or the district attorney's failure to disclose the fact to the court or

the defense – the Supreme Court stated: "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Id., 455 U.S. at 217. Rollins argues that permitting the jury to deliberate at the hotel, outside of the trial judge's ever watchful supervision, violated his due process rights.

As the Superior Court stated, Rollins failed to allege in his PCRA petition any specific harm arising from the trial court's permitting the jury to deliberate at the hotel, or how the outcome of his trial could have been different if counsel had objected. He makes no such assertion here either of any improper communication or influence upon the jury's deliberations. Accordingly, I recommend that the state court decision, holding that permitting the deliberations to continue at the hotel did not violate Rollins's due process rights, was not contrary to nor an unreasonable application of Maddox and Smith.

G. **Rollins's Eighth Issue: Violation of Due Process by Denying Rollins an Appropriate Number of Peremptory Challenges; Derivative Ineffective Assistance**.

This issue was raised and exhausted in Rollins's direct appeal. The Pennsylvania Superior Court examined the issue of whether the trial court's refusal to grant Rollins additional peremptory challenges during jury selection was an abuse of the

31

court's discretion and a denial of equal protection under the

state and federal constitutions.  The Superior Court stated:

> As to the alleged abuse of discretion, appellant has
> not set forth any actions by the court which would
> evidence such an abuse.  Because the Commonwealth was
> seeking the death penalty against appellant, twenty
> peremptory challenges were evenly divided between
> appellant and his co-defendant, pursuant to PA. R. CRIM.
> P. 1126(a)(3) and (b)(1).  Had appellant been tried
> alone, he would have been allowed twenty peremptory
> challenges of his own, but we do not find the court's
> refusal to increase the number of appellant's
> challenges an abuse of discretion, inasmuch as there is
> no constitutional right to any peremptory challenges.
> Commonwealth v. Morales, 508 Pa. 51, 494 A.2d 367
> (1985).  The court properly interpreted and applied the
> Rules within its discretion, and we find this aspect of
> appellant's claim without merit.

(Resp. Ex. B at 2.)  In his federal petition, Rollins

acknowledges that a criminal defendant has no constitutional

right to peremptory challenges or additional peremptory

challenges; however, he argues that once the Commonwealth has

granted a defendant peremptory challenges, it becomes a state-

created liberty interest protected by the Fourteenth Amendment to

the Constitution.  (Pet. Reply Mem. at 65 (citing Vansickel v.

White, 166 F.3d 953, 957 (9th Cir. 1999))).

I recommend that the Superior Court's holding was not

contrary to Supreme Court law.  Rollins's citation to the Ninth

Circuit opinion in Vansickel is of dubious value.  In Vansickel,

the Ninth Circuit relied upon its own holding in United States v.

Martinez-Salazar, 146 F.3d 653, 658 (9th Cir. 1998) for the

proposition that "due process would be violated if a trial court

permitted a defendant to exercise fewer than the number of peremptory challenges authorized by law." _Martinez-Salazar_ was itself overruled by the United States Supreme Court one year after the _Vansickel_ decision.  _See_ _United States v._ _Martinez-Salazar_, 528 U.S. 304 (2000).  In its opinion in _Martinez-Salazar_, the Supreme Court specifically held that peremptory "challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension."  _Id._ at 311.  Because there is no constitutional right to any peremptory challenges at all, there can be no constitutional right to a certain number of challenges.  Nothing in the Superior Court's decision conflicts with this binding Supreme Court law.

   **H.**   **Rollins's Eleventh Issue: Due Process Violation**
         **Stemming from the Trial Court's Instructions on Malice;**
         **Derivative Ineffective Assistance**.

   With respect to Rollins's claim that he was entitled to a new trial because the trial court improperly instructed the jury regarding malice, the Superior Court stated on direct appeal that:

> Appellant's final argument is the trial court erred in including malice as an element of murder. This argument is entirely without merit.  Appellant contends the court, in its instructions, equated malice with specific intent to kill, thus impeding a voluntary manslaughter verdict.  On the contrary, the court's instruction stated:
>
> > The difference between murder and manslaughter lies in the fact that to constitute murder the unlawful killing must

33

> have been done with malice.  Where an
> unlawful killing has been done without malice
> the crime rises no higher then manslaughter.
> Malice then has a special legal meaning.
> Malice may be of two kinds, either direct or
> expressed malice as where there was a
> particular hatred on [sic] ill will against a
> particular person or implied or indirect
> malice as in the case of a crime committed
> with depravity of heart, cruelty,
> recklessness of consequences and a
> disposition of mind regardless of social
> duty.  If any person has so acted, he's
> regarded in the eyes of the law as having
> acted with malice.  Malice is the thing which
> distinguishes murder from other types of
> homicide.

(N.T., 7/19, 88, p. 426).

> As the Crimes Code only divided murder into
> degrees, the common law definition of murder, and with
> it the element of malice, remains.  Legal malice
> continues to be the dividing line between murder and
> manslaughter.  Commonwealth v. Young, 494 Pa. 224, 431
> A.2d 230 (1981); Commonwealth v. Hart, ____ Pa. Super.
> _____ A.2d ____ (No. 2807 Philadelphia 1988, filed
> 11/8/89).  A jury instruction containing this element
> was not improper in a murder case.

(Resp. Ex. B at 5-6.)

     In his federal petition, Rollins argues that the malice

instruction was 1) unconstitutionally vague, and 2)

unconstitutionally impeded a finding of not guilty or guilty on a

lesser homicide charge.  The Commonwealth argues that none of

these habeas issues was fairly presented to the state courts

because Rollins direct appeal arguments did not raise any federal

constitutional issues.  I agree and recommend that Rollins's

Eleventh Issue was never fairly presented to the state courts.

     "In order to satisfy the exhaustion requirement, a federal

34

habeas claim must have been 'fairly presented' to the state courts. . . .  This means that a petitioner must 'present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'"  Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005) (internal citations omitted).  A claim is not fairly presented if the state court "must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim."  Baldwin v. Reese, 541 U.S. 27, 32 (2004).  Mere similarity of the federal and state issues is insufficient to prove exhaustion.  Duncan v. Henry, 513 U.S. 364, 366 (1995).  The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition.  Nara v. Frank, 488 F.3d 187, 198 (3d Cir. 2007); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

The issue Rollins litigated in his direct appeal was whether the trial court erred in charging the jury on malice as an element of the crime of murder, when no such element is found in the Pennsylvania statute defining murder.  (Pet. Reply Mem. Ex. E. at 20.)  He also argued,

> It is thus clear that malice is not only a concept far
> too vague for even handed application, but that its
> presence in the case serves to prevent meaningful
> consideration of voluntary manslaughter since the test
> for malice may readily be found to be a specific intent
> to kill and accordingly, once found, it absolutely bars
> a voluntary manslaughter verdict.

35

(<u>Id.</u> at 23.)  Rollins, although he employed the concept of vagueness, he cited no federal decisions to support his vagueness argument,[10] and cited no specific federal constitutional provision, so as to alert the state court that he was attempting to raise a void for vagueness claim under the Due Process clause of the federal constitution.  For this reason, I recommend that the issue was never fairly presented to the state courts, and is now procedurally defaulted with no showing of cause and prejudice or miscarriage of justice.[11]

For all of these reasons, I make the following:

---

[10]Rollins contends that he did cite a federal decision, <u>United States ex rel. Matthews v. Johnson</u>, 503 F.2d 339 (3d Cir. 1974).  The issue in <u>Johnson</u> was whether due process was denied in the trial court's refusal of a request for a voluntary manslaughter instruction.  It was cited in support of Rollins's assertion that the trial court's instruction on malice erected a bar to the return of a voluntary manslaughter verdict under the Pennsylvania murder statutes.  (Pet. Reply Mem. Ex. E. at 23-24.)

[11]Because I recommend that all of Rollins's substantive issues fail, I likewise recommend that his Eleventh and Twelfth issues, asserting generalized ineffective assistance of counsel claims, also fail.

## RECOMMENDATION

AND NOW, this 1st day of May 2008, IT IS RESPECTFULLY RECOMMENDED that this matter should be DISMISSED without an evidentiary hearing.  I further RECOMMEND that there is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


 /s/ Arnold C. Rapoport
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

37